May it please this honorable court. We are asking this court to reverse Judge Gomez, Chief Judge Gomez of the District Court of the Virgin Islands with respect to counts 1 through 13 and counts 25 and 26, I'm sorry, with regards, I call them locally the federal charge and the local charge. The federal charges are being a conspiracy to distribute and or sell firearms or deal in firearms. The local offenses are failing to register and unauthorized possession of a firearm. We are contending simply this, when the vehicle was stopped there was apparently or there was in fact a search warrant for the seizure of those weapons. Unfortunately the vehicle never left the airport area nor did the vehicle commit any. What's the impact of that? In fact it never, in terms of the local registration part of it and possession, which is really the same thing because the registration is affirmative defense in possession, what's the impact of them being arrested before they get out of the airport or immediately upon? Because the problem is this. It is a problem. If you stop me before I have an opportunity to do what the law requires, then you have in fact said I am preventing you from doing what the law requires. We are saying the statute was changed, the McKee case, KIE, when it was decided it indicated clearly the affirmative defense is in the hands of the person who is more appropriate to in fact present that affirmative defense. Is it of any consequence, Mr. Francis, that Tyson never registered any of the weapons that he had brought into the Virgin Islands prior to this one time that he was arrested? I believe it's insignificant. Why is it insignificant? It's insignificant. That information was presented to the jury. He never, whenever he came into the Virgin Islands with any number of weapons, never registered those weapons. There were two occasions that claimed or the evidence suggests that he came in with weapons. I am suggesting if in fact he did violate the law before, but I'm sorry, let me answer this. Are we on the sufficiency issue now with respect to the conspiracy charge? Yes, if we will, yes. Because we are saying that there were no testimony that in fact Mr. Morrell and Mr. Tyson and any other person was in fact conspiring to in fact proceed with the dealing of firearms. It's true. What is your view of how, if at all, we should consider Mr. Morrell's testimony? This was a judgment of acquittal motion made at the close of the government's case. In terms of my case, Mr. Morrell was acquitted by the jury. Right. The government took the, the judge took that motion under advisement. That is correct. And then ruled on it at the close of the trial. That is correct. What, if any, significance does that have in terms of the sufficiency of the evidence inquiry that we have to make now and the testimony that we consider? I believe that's where we go back to the whole Webb case. The whole Webb case and the rule of consistency. What that rule says, and there's been some cases in the Third Circuit that suggest, and Judge Stapleton in particular, in the Palmieri case I believe, he is the one that suggests the rule of inconsistency is over with. There's no longer- Judge, Judge Garth is, is the one who suggested, I believe, that, that the rule of consistency at least as far as our court is concerned should be rejected because other courts have. But I thought, and please correct me if I'm wrong, that you were relying on the rule of consistency and am I wrong about that? No, you are not, sir. I'm, I'm sorry, Judge. You're not wrong. Well, how, how can we go about applying the rule of consistency when it seems to have been undercut, not actually rejected, but undercut by the Supreme Court and when it seems to have been rejected by virtually all of the courts of appeals? In fact, the government went as far in their brief to say that it's no longer the law in the federal courts. In their reply brief, I think, they say it's not applicable in the federal courts. But I believe that rule has never been specifically overruled, no longer valid, will no longer use that rule. By, by the Supreme Court, you're correct about that. That is correct. May, may I ask you, Mr. Francis, we can, shifting from the rule of consistency to, to what the government has said, the fact that what we had and what much of the appeal turns on is the grant of a motion for judgment of acquittal which was made at the conclusion of the government's case and, and therefore would turn upon the condition of the record as it existed at the close of the government's case in chief. That is correct. And I want to hear from the government on this also. There, there was evidence, was there not, that in February of 2008, Mr. Tyson paid, I believe, $1,300 to fly Mr. Morell from the Virgin Islands to Tennessee. Yes. Isn't that correct? Absolutely. And that came in during the government's case, at least a record of it came in during the government's case. That is correct. Okay. What about the evidence of Mr. Morell accompanying Mr. Tyson when he shopped for weapons and purchased NX-14 weapons? When did that come in? Mr. Morell was staying in Mr. Tyson's residence or the residence that When did the testimony come in? Who, who made, who testified to that fact? An agent or was it Morell? I believe it was a videotape that was seized. Okay. And that, that videotape showed Mr. Morell outside of the store. It, it did. But did it come in during, again, I, I, I want to hear from, from Mr. Feltieri on this. Did it come in during the government's case or did it come in during impeachment of Mr. Morell? It came in as impeachment after Mr. Morell had testified. For the defense. And I, I believe I had objected or I believe there were some objections in regards to whether or not it was relevant and whether or not the evidence was sufficient. Is that when the photographs of the two posing together came in? That is, I believe that is also correct. Yes. But if I may get. You have a very high hurdle to overturn the, seems to me, is conviction of, of the jury because of the deference that we give jury verdicts. That is correct. And it, it. Why is the verdict not titled to deference here? Give, given the, the testimony that Tyson paid for Morell's visit. And this is conspiracy too. Yes. The conspiracy charge. The. Paid part of his trip to go from the Virgin Islands to Tennessee and come back with 11 firearms. And they both had firearms when they arrived at the airport. And given all the other evidence, including the videotape you just talked about. I believe. What about the deference we give to the jury? I believe the evidence suggests that it was ammunition, that if anything, on the February 8th or the February date that Mr. Morell was carrying, I do not believe he carried any firearms in as much as he did not have a firearm case, which is necessary for purposes of traveling with firearms. I believe he may have had ammunition. They traveled together on two occasions when Tyson carried firearms. And, and did Morell carry a firearm case on one occasion? No, I do not believe. And I'm, I may be on, I may be wrong in that regards. But my understanding of the record does not suggest that Morell ever carried any firearms. He may have carried and was only one trip that Mr. Morell did. The testimony. Given this history between Mr. Tyson and Mr. Morell, the Judge Duane, he says referred to, then viewing the record as a whole in the Rule 29 motion, isn't the fact that Morell picks up Tyson at the airport entitled to some weight or some importance? It has to. It has to. No doubt about that. The problem is the testimony suggested that Mr. Tyson had attempted to secure a rental vehicle at the airport. And in fact, there was no rental vehicles at the airport and then made a call. I'm sorry. And then made a call to Mr. Morell that same day. But again, that is in fact, looking at the testimony as a whole, yes, it is in fact an important situation. No doubt they test-fired weapons together in Tennessee. Morell went out there and test-fired weapons together with Mr. Tyson. That is correct. And that those weapons that were test-fired were then brought back into the Virgin Islands. Yes. I think those were the same weapons that were brought back into the Virgin Islands. Excuse me. Two things. When you mentioned Palmieri before, when I asked you about Morell's testimony, Palmieri just gets to an issue of the number of – when you can find, when there's enough evidence to find that someone's in the business of selling weapons. And I wasn't trying to get down that road. I'm just trying to find out from your perspective whether or not we should consider Morell's testimony. Because in the brief, you really did not seem to draw a distinction about the fact that the judge took the motion for judgment of acquittal under advisement and then ruled on it. And the arguments you made relied upon Morell's testimony. So I think you're arguing that Morell's testimony, when considered, does not give sufficient evidence to sustain the conviction, but you are not arguing that we should ignore Morell's testimony. Am I right about that? I'm not suggesting that you should ignore Mr. Morell's testimony. It becomes rather important inasmuch as after you have considered all the evidence, you must include Mr. Morell's testimony. It is just my position that it was not sufficient evidence with respect to that. One more point. Go ahead. I'm sorry, my time is up. I know. My time is up. You can go, you can finish your sentence. The problem is simply this. We know, for instance, in McKee, with an I and E, that there was an issue of intent to register is not an element of the offense. In this particular case, and what makes it a distinction with Mr. McKee's case, is the fact that Mr. Tyson did everything on this occasion to comply with the law. He did everything. But what did he do? He got in the car and went in the opposite direction from where we had to go to register. No, no, no, no. This is where the problem comes in. The airport, the Cyril E. King Airport, they never left the confine of the Cyril E. King Airport. The restaurant that they were supposed to stop to pick up a patty for Mr. Tyson, who had been traveling all day. It's like a circular type scenario in which you would still have to go out, and it's somewhat of a peninsula. But Mr. Francis, there was never a request for an instruction on this affirmative offense, was there? I agree. We're looking at this under plain error, right? That is correct. And the reason I say that is when I keep mentioning Title 23, 470C, no prosecution, I believe is what the statute said, shall apply for noncompliance with Section 470A or 470B. Now let me ask you about the issue involving engaging in the business of dealing firearms. Yes. Which your client was acquitted by the judge, entering a judgment of acquittal. But I wanted to ask you about the evidence that was presented, which included four different trips, at least, from Tennessee to the Virgin Islands, in which guns were brought from Tennessee into the Virgin Islands. The evidence of the test firing of the weapons, as well as the evidence of the codes that were found showing that there was expenses made and that there was a profit made in the transaction involving guns. At least that's what the codes reflected. And then the number of guns. I mean, we're talking about not one or two guns, and we're also not talking about what apparently would be considered antique guns. We're talking about firearms. And the frequency of the trips, all within a span of about six months, out of which four were spent in the National Guard. Why could that evidence not be sufficient for a jury to find that Tyson was engaged in the business of dealing firearms? I think a clear reading of the statute suggests that, in fact, you may dispose of one for additional... I'm trying to... for additional... I can't recall the word right now. But, yes, you may consider that evidence, too. However, the problem in this particular situation, the same requirements... There's one thing. Tyson was a member of the National Guard. If he was a member of the National Guard, was he not? And this is a new argument I've just decided to make and I did not make. If by chance... You were wise not to have made that argument before, Mr. Williams. Okay, I'm sorry. But to answer your question, Judge Fuentes... I'm trying to get at the basis for the district judge disturbing the jury's verdict of guilt given this evidence. What could the district judge say contrary to the verdict to justify a judgment of acquittal? The district court judge had required or asked the government to submit and show him in the brief, in the transcript, I'm sorry, where exactly you find support for what this court is now asking through you, Judge Fuentes. And I tend to believe Judge Gomez in going down through the list, engaging business for profit. What do you make of the notepad seized from Tyson's apartment? No one practically interpreted that notepad other than to say that this was what it said. I believe it was Mr. Jenkins, I detect it. He paid for an assault rifle in the amount he sold for another rifle. The amount he paid for it, the amount he sold it for it. It's about five times the market price. And testimony that it had AK and AR, I remember reading that portion of the transcript because there was no objection and Judge Gomez called you all up to sidebar and said, I know there's no objection. I think what's being testified to is opinion, but after that sidebar the government witness was still permitted to at least testify to weapons that are known as AK and AR. That is correct. That's pretty powerful evidence, isn't it? It is. I have to say it is. And there was also testimony wasn't there that would have permitted the jury to conclude that that high point 9mm that was purchased by Tore was a weapon that was purchased from Titan. Would the jury have concluded that? I tend to believe that yes they could have concluded that but I tend to believe that was highly speculative for the reason why. He actually did deal in a gun, didn't he? He actually did deal a gun and there was evidence presented that there was a specific deal. Well, the question came down as to Mr. LaTore never testified Well, he purchased a gun with a serial number that serial number was on a gun that was found on the person of a woman who was dealing drugs and he paid $139 or $29 for that gun she paid $330 for the gun from him she wired him the money. That's correct. So there was a specific deal in other words there was evidence of dealing in firearms. I I won't have to answer your question I'm telling you what you already know but I'm groping for a basis for the district judge's entry of the judgment of acquittal given this evidence that the jury considered. Okay. Thank you, Mr. President. We put 5 more minutes on your on your time I want to apologize for when you were referring to a concurrence by Judge Stapleton and I said Judge Garth Judge Garth had the concurrence in the Hohab case so I was wrong about what case that was. Thank you. May it please the court, John Palateri on behalf of the United States if the court will allow it the government would like to request cross appellant would like to request 2 minutes for rebuttal We never really for reasons I don't frankly understand our practice is never to do that That's fine. The request is a very fair one since you're a cross appellant but we've never ever done that I don't understand why we don't I did see in the rules it said normally so I thought I would just bring it up Give it a shot The government is fine without rebuttal The jury's guilty verdicts in this case were well supported by the evidence of trial The evidence showed that the defendant Sean Tyson bought 35 firearms over the course of 8 months He made 4 trips during that time period to the Virgin Islands with firearms to sell them there for profit He never registered those firearms in the Virgin Islands or obtained a license to possess them in the Virgin Islands He did not have a license to deal firearms a federal license He knew his conduct was unlawful Calroy Morrell the co-defendant was his co-conspirator in the scheme With respect to counts 14-23 which involved the Virgin Islands law He does have a defense He could raise an affirmative defense to that, couldn't he? In other words The Virgin Islands law requires that there be some immediacy in registering a gun in the Virgin Islands The Virgin Islands statute makes it unlawful to possess a firearm without authorization This court has said that that element is satisfied by proof that the defendant did not have a license to possess the firearm Yes, there are various provisions of the Virgin Islands Code that a defendant could raise as an affirmative defense to argue that despite the absence of a license the firearm possession is unlawful He did have lawful right to have those firearms when he entered the Virgin Islands Did he not? Well, in Tennessee But he's bringing them to the Virgin Islands The Virgin Islands in Tennessee doesn't require a permit to purchase His possession of the firearms was lawful when he landed in the Virgin Islands I would disagree with that for the following reason The statute requires immediate reporting to the Virgin Islands Police Commission Let's say he didn't have a chance to report, he just got in the airport What do we make out of that term? It's obviously been revised to get rid of the so-called loophole 24 hours, but it's impossible to apply as written Immediate registration Even before you get to the part where you go outside of the security You've got to rush right over As soon as you touch down from the airplane You've got to immediately register before you even bend down and pick up your suitcase and walk into the airport That's the literal meaning of immediate It can't mean that So how do we make any sense out of it? It means that the defendant needs to take action to report upon arriving in the Virgin Islands needs to take action to report the firearm to the police without any kind of intervening events Now what's relevant to this inquiry is intent Now before, what's relevant to this inquiry is intent intent to register I think this court suggested as much as McKee and suggested that When McKee said that the legislative process could have included the word requiring intent or could have written intent into the statute, had they wanted to they could have put intent in there they didn't, so intent was not a requirement Under the 24 hour rule And the court suggested that that was the reason, because intent was not relevant, that was one of the reasons that the legislature amended the statute That's how I read McKee And I think that's correct Because I think that if someone possesses a firearm for 30 seconds or 5 days in the Virgin Islands and has no intent whatsoever of ever registering that person is not immediately reported and is not entitled to that defense We do have to analyze this under plain error Well I think that there's waiver, so I don't think that it even gets to plain error But I think that if the court were to look under plain error If the court were to consider that it's not waived then it would be under plain error It's forfeited, yes I think that the rules are that there are at least two procedures that have to be followed before an affirmed defense is not waived What was the instruction given to the jury on this immediacy issue I mean it was verbally it's just restating the statute for the jury? There was no instruction on immediacy There was the instruction on the 2250 That's why the waiver, is that why there's a waiver? There was no request for an instruction and there was no instruction So the jury had nothing to find and the government had no notice that it may have to offer a rebuttal So effectively the jury did not have an affirmative defense raised Absolutely, there was no affirmative defense raised, there was no instruction on this defense and so the jury didn't have it in front of them and so there was no factual finding about this and for that reason it's waived What does it mean how do we apply 470 someone gets off the airplane at the airport what does that person have to do that's why they have to go to the bathroom they're literally out of compliance with 470 I think that in other contexts immediately requires, without any kind of intervening event that prevents that shows that the person is not complying or and I think that for example it's a context driven you know totality of the circumstances consideration and I think what's especially important in this context is intent if there's no intent whatsoever and the defendant drives somewhere and has lunch that's absolutely not immediately reporting Isn't that exactly what he said though I intended to register the weapons when he was arrested When he was arrested the defendant said nothing to the police at the time of his arrest At some point he said he intended to And then the defendant was brought to the police station an ATF agent began to interview the defendant Was it true, is it true that he was arrested in the airport grounds in other words he hadn't been given a chance to get out and head towards town where he might register the weapons My understanding is that there are two There are two paths one can take from the airport in St. Thomas One going to town, one going somewhere else to where there's some mention of a FedEx or other areas and Mr. Morell drove to the other area and upon his arrest he said I was going to Garden Street, I wasn't going anywhere else and then at trial he said I was going to eat lunch or we were going to eat lunch no suggestion that he was going to the police station So the evidence is that he was going somewhere other than the police station and of course I think that the testimony regarding the fact that they were going to Garden Street establishes that they were not going to the police station and regarding the evidence of intent to register that occurred in the middle of a toward the latter part of an interview with an ATF agent the ATF agent asked about firearms that had been purchased and asked where were you going with these she asked have you registered these firearms were in the past and got no response and said no these firearms are not registered and then the defendant said I was going to the police station upon my arrest to register them now I think that for a couple of reasons that's not sufficient to raise a defense I think it's of a similar magnitude or probity than the testimony or the evidence in Lawrence let me ask you a question about count 25 which is under section 924 which criminalizes transporting a firearm knowing that a crime would be committed but there was really no evidence that he knew that a crime was going to be committed with the weapons that he was transporting so how do you justify the verdict in this count the indictment alleged that Mr. Tyson knew or had reasonable cause to believe that someone else would possess the firearms in the Virgin Islands without registering them and obtaining a license as required by 2253 of the Virgin Island Code and the evidence is two-fold number one is Mr. Murrell obtained joint constructive possession of the 11 firearms that Mr. Tyson brought to the Virgin Islands on July 31st 2008 and had no intention and did not immediately report them as required by his possession of them in fact he was charged with possessing them he was acquitted but the government charged him with unlawful possession and the government's theory of trial was that he possessed them unlawfully he was without authorization he was not convicted of that charge he was not convicted of that charge or any other charge what is the crime that you contend that Burrell knew was going to be committed with those weapons unlawful possession just as Mr. Tyson unlawfully possessed them without obtaining a license unlawful possession without a license in violation of the Virgin Islands Code 2253 Do you think giving Murrell weapons or his carrying weapons is sufficient? Yes I think that Mr. Murrell's possession of the weapons shows that Mr. Tyson knew and I think it's you have to take into account the other evidence regarding Mr. Murrell's participation was that Mr. Murrell traveled to the Virgin Islands on a previous trip in February and did not register them then and then Mr. Tyson again called Mr. Murrell contacted him to pick him up on July 31st the whole scheme here shows that Mr. Tyson did not believe, knew had reasonable cause to know that no one to whom he transferred a firearm whether it was Mr. Murrell or someone else would register them, would report them to the police as required by 2253 Does the record demonstrate that Mr. Tyson was selling these weapons for a markup that is for amounts over and above what they would lawfully command from the marketplace? Well the evidence is that Mr. Tyson purchased for example the high point that Mr. DeLatorre bought for $139 and sold it for $330 The evidence is also that Mr. Tyson profited We don't know where he purchased it from The question is trying to get at the extraordinary nature of the markup if there was one or whether or not the price that he ended up selling it for was basically if you can use that term here a fair market price and with the AK and the AR it seems to me that markup is such as to suggest to the jury that that's probably in excess of what the regular market value would be but Latorre, that markup is not all that great I'm not sure it matters That is what I'm getting at that is it seems to me we're talking about the need to infer Mr. Tyson's intent that is Mr. Tyson's knowledge the reasonable cause to believe that people buying these were doing so for unlawful purposes and one way one theory I suppose you could pursue would be to demonstrate that the weapons were being sold with a sufficiently high markup above what the market would narrowly command so that no one buying for that price would do so if they intended to register a weapon or obtain a license in the near term course that might be one theory to pursue I'm simply asking if the record demonstrates that such that the jury might have drawn such an inference That is a theory that the government I believe proposed in brief maybe not as clearly as your honor just did and I think that the evidence does support that for the following reasons The Jelani Latorre purchase was more than twice the price of the gun It was $139 Mr. Tyson purchased it in Tennessee for $139 He sold it A dealer? Yes and there's the 4473 form for that specific gun Yes From the firearm dealer in Tennessee the 4473 reflects the purchase of the gun and the serial number and there's evidence at trial that that purchase was for $139 and there's evidence that Mr. Tyson received a wire on January 31, 2008 from Mr. Latorre for $330 and then about two weeks after receiving the wire then purchased the high point semi-automatic firearm for $139 then on February 20th flew to the Virgin Islands with Mr. Murrell both of them carrying at least one hard side carrying case full of firearms then Mr. Tyson returned on February 23rd to Tennessee February 26th he enters the military training for 4 months while he's in military training the police arrest Jelani Latorre with the firearm with the serial number obliterated and with drugs in his possession the government was able to restore the to that purchase on February 16th in Tennessee The conspiracy charge against Tyson involved a conspiracy with Murrell to violate federal firearms laws is that fairly accurate? Yes However the jury concluded that Murrell was not involved in the conspiracy now on the theory that it takes two to tango and the jury didn't believe that Murrell was involved in the conspiracy How do we substantiate the conviction against Tyson? The acquittal of Murrell is is a totally different matter and is irrelevant to the Rule 29 sufficiency issue I think that's the teaching of Powell and that's what every federal court to consider Powell has concluded They're asking us to completely ignore the jury acquitting Murrell of a conspiracy with Tyson even though you say that the conviction of Tyson is with a conspiracy of Murrell As the court said in Powell there can be any number of reasons why a jury reaches a particular verdict in a particular case But Powell was not a lone conspirator or a lone conspiracy case This is and I want to address this rather I want to hear you address this point because it seems to me apparently for the reasons you just stated in your brief you did not spend much time addressing the Murrell aspect of this jury verdict as Judge Guante says it seems to suggest that the jury concluded that it takes the tango and Murrell wasn't dancing as far as they were concerned and you also say in your brief that the Rule of Consistency is simply not applicable in the federal courts what you don't address is the fact that this circuit has not yet explicitly rejected the Rule of Consistency when I erroneously referred to Judge Garth's concurrence earlier was in the Hoib case and he expressed a belief that we ought to do so but we kind of avoided doing that so don't you need to squarely address whether or not this court should finally as some other courts have reject the Rule of Consistency yes you're correct this court has not directly addressed this issue every other federal court to address it has agreed with Judge Garth's concurrence and I think for the correct reasons Powell teaches and again correct Powell does not involve I don't recall specifically but I believe it does not involve a conspiracy or the Rule of Consistency directly as this case does but Powell teaches that inconsistent verdicts are it's not judicial tinkering after the fact to make verdicts consistent that that is to be done rather the inquiry is Rule 29 sufficiency of the evidence that is what protects the defendants in this context when there are inconsistent verdicts you look to  look to the sufficiency of the evidence and that protects the constitutional rights of the defendant okay so what with that in mind let's assume that the Rule of Consistency is no longer applicable what's your best evidentiary case to support your to support a verdict of conspiracy let's assume you're arguing the Rule 29 motion right now how do you argue to the district court at that stage at the conclusion of the government's case that you've got a case of conspiracy when you do that keep in mind Scheffler and our opinion in Scheffler and how why this does not fit within that that view of looking at associations between two persons to build rise to the level of an agreement the evidence showed that during Mr. Tyson's second trip to the Virgin Islands he flew back with Mr. Murrow and paid for a large portion of his ticket $800 of a $1300 ticket now Mr. Tyson was unemployed at the time Mr. Murrow made $500 a week that's a substantial sum and the purported ostensible reason was so that Mr. Murrow could go and inquire into a job training program utterly belied by the facts just I think the jury is entitled to use common sense and just reject that they flew back together they hadn't known each other a long time at the time that amount was paid I think the evidence was that they knew each other about a year I think that Mr. Tyson was friends with Mr. Murrow's sister they weren't close friends of any sort they were acquaintances and Mr. Tyson paid that sum they flew together to Tennessee again the ticket purchased two days before Murrow's travel while there they go to all these gun shops together Mr. Tyson buys all these firearms is that in the government's side of the case rather than the impeachment of Murrow during the defense side of the case the government offered that during its case in chief and the district court kept it out yes he did and then during during the Mr. Murrow's case the government it was offered and the government was allowed to put it into evidence and again I think that the district judge I think was wrong to keep it out during the government's case in chief because I don't think the analysis was any different during Mr. Murrow's case than during the government's case there was no unfair prejudice to this evidence and it was probative during the trip to Tennessee there were various purchases of firearms during which time Mr. Murrow accompanied Mr. Tyson they testified the firearms and he accompanied them to the shops did Murrow testify he did testify did he give any explanation why he was going to Tennessee other than to it seems like he went there to check out guns and bring them back did he afford any other explanation for his trips to Tennessee he did he said that he was going to look into a job training program instead of and I think the jury was entitled to use some common sense and think that obviously someone can make a phone call or mail for literature and while in Tennessee police reported to Mr. Tyson's residence because there were reports of a gunshot they found Mr. Murrow Tyson and another Sherry Wagner who owned the house where Mr. Tyson resided and Murrow was staying at the house and he Tyson and Wagner were all were all a little bit they weren't cooperative this is after the report of weapons fire having been heard is that the episode yes weapons fire that was February 16th I believe that police reported to the Wagner residence where Tyson and Murrow were also residing at the time and this is in the government side of the case yes and that showed that they were all evasive and uncooperative with the police trying to investigate what was happening with these guns I think the testimony was we were asking all of them Mr. Murrow, Mr. Tyson, Wagner where were these guns and they weren't answering us why do you have these guns then Mr. Murrow and Mr. Tyson flew back about a week Murrow was in Tennessee for about a week they flew back they both flew back with a hard side carrying case with guns to the Virgin Islands Mr. Murrow did not report or register any firearm Mr. Francis said that Murrow did not return with guns or a case the evidence shows that he had a hard side carrying case there's testimony that Murrow and Tyson each had at least one side carrying case full of guns that's the testimony and the total was what 11 guns no this was on the second this was on the third trip how many firearms there's no testimony about the number of firearms how many firearms on the last trip 11 on the last trip and they were both carrying cases Mr. Murrow did not fly Mr. Murrow did not fly from Tennessee to the Virgin Islands on the last trip Mr. Murrow picked him up though the evidence does show coordination to the extent that you can argue that in that Murrow picks up Tyson at the airport right before they're picked up yes he picked up Mr. Tyson and the evidence shows that Tyson Mr. Francis argued that Murrow picked up after Tyson unsuccessfully tried to rent a car is that correct? I think that was a suggestion maybe by the defense it's hard to say exactly there was some testimony that Mr. Tyson was walking around the airport a little bit but there was also testimony that Murrow was waiting there for 15 minutes before Tyson arrived so the inference basically from your position Murrow's car was there when Tyson's plane arrived no matter what Tyson tried to do Murrow was already there yes he was there for 15-20 minutes before Tyson went out to put his luggage in the car and the evidence is that Mr. Tyson was carrying the hard side carrying case the same type of case he went with Mr. Murrow to the Virgin Islands with on the third trip which included guns so Murrow knew that Tyson was carrying guns just by seeing the carrying case that he was bringing with him and that he put in the trunk that shows Mr. Murrow's knowledge as well and also there were holsters in the car that belonged to Mr. Murrow that he admitted belonged to him and another occupant in the car also had a gun on him that was not registered in the Virgin Islands so from all of this excuse me all that cumulative evidence is more than sufficient to show that there was an agreement Mr. Tyson and Mr. Murrow entered into an agreement Tyson said I'll pay for your ticket come with me, bring some guns back and one of the guns that was brought to the Virgin Islands on that trip back from Tennessee when Murrow and Tyson both carried a firearm was found in the possession of Vittoria. That firearm was brought to the Virgin Islands on that trip and that was purchased for well above market price the serial number was obliterated and it was involved in a drug offense and that was the cumulative evidence regarding conspiracy Thank you very much The testimony of Mr. Murrow shows clearly that once he got to Tennessee he received a wire with regards to monies that were sent by his family now there was no evidence other than Mr. Murrow's testimony that he had in fact paid back Mr. Tyson for the trip the trip to Tennessee was for purposes of job situations with Mr. Murrow Mr. Tyson had seen him recognize that Mr. Tyson had in fact been trained to operate those what do you call them, those big rigs trucks, things of that nature Well that was the testimony by the peers that the jury squarely rejected all of that Well true in terms of Tyson but not with regards to Mr. Murrow because Mr. Murrow was acquitted of all charges I'm sorry, are you indicating that Mr. Murrow when he testified testified that he paid back some of the money for the airline ticket He did not say in specific terms paid back, but he did say that he did receive a money order in which he then purchased some items with regards to him being in Tennessee and as far as the government's case is concerned before you ever get to the defense in Mr. Murrow's testimony there is simply testimony that Mr. Tyson provided $1300 to Mr. Murrow Is that right? Yes, I have no testimony in the government's case of any of it being paid back or of Murrow providing any money in return I don't think that there is also if I may with respect to the Garden Street area the Garden Street area is less than two well, in terms of stateside configuration it's less than two blocks away from the Department of Public Safety and it's right across from the District Court building in St. Thomas Mr. Randy Lewis' building but the point be that is made the record we believe is sufficient to say that this is what Mr. Murrow had said but it does not change the fact that before Mr. Tyson had any opportunity, he was stopped I give you one other testimony of the Port Authority police officer that Mr. Tyson had known who he met at the airport that same day, they greeted each other You're talking about the registration of the weapons? Yes, if I may and what had happened is that Port Authority officer did speak to Tyson the problem is the government presented that witness to I guess refute the fact that Tyson did not speak to that individual the Port Authority officer with regards to him, Tyson, traveling with those 11 weapons on the 31st of July You don't disagree that intent can be established on the basis of circumstances? Absolutely And part of the circumstantial evidence is that Tyson had made several trips from Tennessee to the Virgin Islands and on none of those other prior trips did he register any weapons? That was before the jury That technically I must suggest, yes On the basis of that, why is it unreasonable for the jury to find that on the last trip he had no intention of registering the weapons? On this trip he said I intended to register So whether or not he had registered in any other trips, and as Mr. Dilugu, the Delta Air Lines personnel who had indicated that Mr. Mr. Tyson had traveled with weapons there's one other fact I should recognize There's also testimony that I believe it was Ms. Breedy for the airlines in Tri-Island State who had indicated that Mr. Tyson upon returning back to the States had inquired about lost luggage Moreover, Mr. Morell and Mr. Tyson did not arrive on that trip to the Virgin Islands on the same plane Mr. Morell's plane was apparently diverted or because he was late or something of that nature But that is basically the essence of our case, and I would ask this court to affirm Judge Gomez's decision with regards to the federal firearms offenses and reverse the jury verdict with respect to the local offenses I thank this court very much for listening to me today. Thank you very much. Thank you. Thank you, Mr. Francis. On the next case we've been informed that Green calls for Mr. Morehead who is currently ill and is in the hospital Do you hear anything else from Mr. Morehead? Don't make any action on that But Ms. Kepper is here Thank you